UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 07-CV-2432 (JFB)(ETB)

———————

S. STRAUSS, INC.,

Plaintiff,

VERSUS

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 342,

Defendant.

———————

MEMORANDUM AND ORDER
August 13, 2007

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff S. Strauss, Inc. ("Strauss") seeks to stay an arbitration initiated by defendant United Food and Commercial Workers' Union, Local 342 (the "Union"). For the reasons that follow, the Court denies plaintiff's motion to stay arbitration.

I. BACKGROUND

The following facts are undisputed, unless otherwise noted.

A. The Instant Action

Strauss is a purveyor of meats and food-related products. (Pl.'s Pet. ¶ 1.) The Union purports to represent certain employees of Strauss pursuant to several collective bargaining agreements entered into by the parties. (*Id.* Ex. A.) Strauss entered into a collective bargaining agreement (the "CBA") with the Union on October 16, 2006, that covered the period from November 1, 2004 to October 31, 2008. (Pl.'s Pet. Ex. A.) Strauss does not dispute that it entered into the CBA or that it has entered into various other CBAs with the Union over the course of the last forty years.[1] (*Id.* ¶ 7-8.) Strauss asserts that it entered into the CBAs "so that its owners and possibly one or two critical employees . . . could participate in the [Union's] affiliated

———

[1] By contrast, the Union asserts that it first entered into a CBA with Strauss in 1987, when it merged with another union. (Dft.'s Aff. ¶ 13.) In any event, it is undisputed that the both plaintiff and defendant have been parties to various CBAs since at least 1987.

employee welfare plan." (*Id.* ¶ 5.) However, the Union asserts that the CBAs were intended to govern the employment relationships of a large number of Strauss employees. (Dft.'s Aff. in Opposition ¶ 14.)

On May 30, 2007, the Union served on Strauss a demand to arbitrate a dispute regarding Strauss' alleged violation of the CBA; specifically, the Union asserted that Strauss had "interfered with the Union's ability to represent its members and engaged in direct dealing by unilaterally attempting to change the working condition[s] of the employees and by discouraging and/or directing the employees not to sign Union authorization cards . . . and to forego Union wages and working conditions which were collectively bargained, in violation of the [CBA]." (*Id.* Ex. A.) According to the Union, it issued that demand after receiving complaints from certain Strauss employees, and after attempting to resolve the issues with Strauss management. (Dft.'s Aff. ¶ 5.) Subsequently, on May 31, 2007, the Union filed charges against Strauss regarding these issues with the National Labor Relations Board ("NLRB"). (Dft.'s ¶ 5.) Also on May 31, 2007, Strauss filed a Recognition Method Petition ("RM Petition") with the NLRB that, according to Strauss, sought to have the NLRB "determine the effect of the [CBA] and representational rights of the employees." (Pl.'s Mem. at 2.)

Strauss commenced this action on June 5, 2007, in the Supreme Court of the State of New York, Nassau County, by filing an Order to Show Cause and a petition to stay arbitration, wherein Strauss sought an "emergency" stay of the arbitration initiated by the Union.[2] Defendant removed the case to this Court on June 15, 2007. Strauss' petition seeks a stay of the arbitration pending the resolution of Strauss' RM Petition before the NLRB. Plaintiff argues that the arbitration should be stayed on the ground that the parties' CBA is a "sham," and, thus, the arbitration clause contained therein should not be enforced. (Pl.'s Pet. ¶ 8.) In support of that position, Strauss asserts that the Union "has ignored any and all of its purported obligations under the series of [CBAs] executed by the parties," (*id.* ¶ 8), has never filed a grievance against Strauss, and has never sought to arbitrate a dispute with Strauss pursuant to the CBA's arbitration clause (Dft.'s Aff. ¶ 19). As such, according to Strauss, "it was always understood [by the parties] that Strauss would not actually be bound by the CBA," notwithstanding the fact that the parties have entered into CBAs for at least the past twenty-one years. (*Id.* ¶ 14.)

---

[2] The Court notes that Strauss commenced this action in state court as a "Verified Petition" seeking to "stay a demanded arbitration," and did not seek preliminary or permanent injunctive relief. Yet, in their submissions to this Court regarding the merits of Strauss' motion, the parties have made arguments using both the standard for preliminary injunctive relief and the standard for a motion to stay arbitration. However, because Strauss' moving papers do not seek preliminary or permanent injunctive relief but, rather, specifically request a stay of arbitration, the Court construes the instant motion as one to stay arbitration. However, even assuming *arguendo* that Strauss was seeking a preliminary injunction, Strauss' request would fail. For substantially the same reasons discussed *infra*, Strauss has failed to establish a likelihood of success on the merits of its request to stay arbitration or to raise sufficiently serious questions going to the merits to make them a fair ground for litigation. *See, e.g., MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

2

B. The Action Filed in the Southern District of New York

In June 2007, certain funds affiliated with the Union (the "Funds") commenced an action against Strauss in the Southern District of New York (the "SDNY Action").[3] (Dft.'s Aff. Ex. A.) In an amended complaint dated June 14, 2007, the Funds sought an immediate audit of Strauss' books and records and an order compelling Strauss to proceed to arbitration regarding the alleged nonpayment by Strauss of money owed to the Funds under the same CBA at issue in this action.[4] (*Id.* ¶¶ 21-34.)

---

[3] The Funds include the Union's Health Care Fund, Independent Welfare Fund, and 50 Welfare Trust Fund, all of which are "employee welfare benefit plans within the meaning of ERISA" that were "established and are maintained by the Union." (Dft.'s Aff. Ex. A. ¶ 4.)

[4] The Court takes judicial notice of the following documents related to the SDNY Action, not for the truth of the matters asserted therein but for the existence of such documents: (1) the parties' filings, (2) the court's summary order rejecting plaintiff's motion to stay arbitration, and (3) the transcript of the preliminary injunction hearing conducted in that action. *Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citing *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted); *see In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 253-54 (E.D.N.Y. 2002); *Seneca Ins. Co. v. Wilcock*, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *2 (S.D.N.Y. May 28, 2002); *see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

Subsequently, Strauss moved for a stay of an arbitration proceeding initiated by the Funds based on the same grounds asserted in this action – namely, that the CBA was a "sham," and that the parties to the CBA, including the Union and its Funds, "never intended to enter into a true collective bargaining relationship." (Dft.'s Aff. Ex. B.) In so moving, Strauss specifically argued that "[m]uch" of the substance of its filings in the SDNY Action was also submitted, without alteration, to this Court in relation to the instant action. (*Id.*) According to Strauss, there are "identical issues pending before the two [c]ourts" relating, *inter alia*, to the validity of the CBA. (*Id.*)

On July 3, 2007, the Honorable Alvin K. Hellerstein issued an order in the SDNY Action directing the parties to proceed to arbitration "[f]or the reasons stated on the record" at oral argument. (Dft.'s Aff. Ex. E.) During the oral argument, Strauss' counsel asserted that the issue before the court was "whether there was a true collective bargaining relationship ever established, [and] whether, if there was, it has been abandoned." (Dft.'s Aff. Ex. F.) Judge Hellerstein then asked Strauss' counsel if Strauss and the Union had, in fact, "signed a collective bargaining agreement and a supplement, which makes it effective for the period in question?" (*Id.*) Strauss' counsel responded: "No question about it, they [have] signed collective bargaining agreements for 40 years plus." (*Id.*) Nevertheless, Strauss' counsel proceeded to argue that, because the CBA was a "sham," "there is no effectiveness to that collective bargaining agreement." (*Id.*)

Ultimately, however, Judge Hellerstein rejected Strauss' argument, and concluded that, as to the "narrow issue" before him – namely, "whether under the grievance proceedings of a *binding agreement, duly*

3

*entered into according to its terms*, arbitration should be had" – that the parties should proceed to arbitration. (*Id.* (emphasis added)) Judge Hellerstein then reiterated his ruling: "[t]he motion to stay the arbitration is denied on the ground that there is an, apparently, validly executed collective bargaining agreement in effect between the relevant unions and the relevant employers." (*Id.*)

II. DISCUSSION

A. The Motion to Stay Arbitration

Federal law favors arbitration as a form of dispute resolution in the area of labor relations. *See, e.g., United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). Therefore, any doubt that a dispute is arbitrable "must be resolved in favor of arbitrability so long as the arbitration clause in question is susceptible to an interpretation that it covers the dispute." *Seabury Const. Corp. v. Dist. Council of N.Y. and Vicinity of the United Brotherhood of Carpenters and Joiners of Amer.*, 461 F. Supp. 2d 193, 196 (S.D.N.Y. 2006) (citing *AT & T Techs., Inc. v. Comm'ns Workers of Amer.*, 475 U.S. 643, 650 (1986)); *see also N.Y.'s Health and Human Servs. Union v. NYU Hosps. Ctr.*, 343 F.3d 117, 119 (2d Cir. 2003) ("Where the collective bargaining agreement contains an arbitration clause, there is a presumption of arbitrability.") (internal citation omitted).

The arbitration clause at issue in this case provides that:

> Grievances arising between the Employer and the employees or between the Union and the Employer shall be reported to the Union and the Employer respectively. In the event no adjustment can be reached within two (2) days after the grievance is submitted by one party to the other, either party may then apply . . . for appointment of an arbitrator.

(Pl.'s Ex. A.) "[W]here, as here, the arbitration clause is broad, any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary." *Int'l Union of Elevator Constructors, AFL-CIO v. Nat'l Elevator Indus., Inc.*, 772 F.2d 10, 13 (2d Cir. 1985) (citing *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977) and *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982)); *see also Assoc. Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir. 1987) ("We will order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract, even if the claim appears to be frivolous."). "'Proof to the contrary' requires language that is 'clear and unambiguous' or 'unmistakably clear.'" *Id.* (citing *Gangemi v. Gen. Electric Co.*, 532 F.2d 861, 866 (2d Cir. 1976)).

The claims at issue here clearly fall within the broad scope of the arbitration clause – that is, the Union's allegations that Strauss has "interfered with the Union's ability to represent its members and engaged in direct dealing by unilaterally attempting to change the working condition[s] of the employees and by discouraging and/or directing the employees not to sign Union authorization cards . . . and to forego Union wages and working conditions which were collectively bargained, in violation of the [CBA]," (*id.* Ex. A), are unquestionably "[g]rievances arising between the Employer and . . . the Union" within the meaning of the arbitration clause (Pl.'s Ex. A). Indeed, in its submissions to this Court, Strauss does not even argue that

4

the labor grievances are not arbitrable under the CBA, but, instead, attacks the validity of the CBA and Judge Hellerstein's decision – arguments which the Court addresses, and rejects, *infra*. (*See* Pl.'s Reply at 3.) As such, the Court finds that the Union's claims fall within the scope of the arbitration clause and that Strauss has failed to present any compelling proof to the contrary. Accordingly, because the strong presumption of arbitrability has not been rebutted by Strauss and because, as discussed *infra*, Strauss' other arguments to stay arbitration are unpersuasive, the Court denies Strauss' motion to stay arbitration.

### B. The Purported "Sham" Collective Bargaining Agreement

As noted *supra*, Strauss argues that the arbitration should be stayed on the ground that the CBA is a "sham," and, thus, the arbitration clause contained therein is unenforceable. (Pl.'s Pet. ¶ 8.) In response, the Union argues that, due to Judge Hellerstein's ruling in the SDNY Action, Strauss is barred by the doctrine of collateral estoppel from relitigating the issue of whether there is a valid, or non-"sham," CBA binding the parties.

The doctrine of collateral estoppel, also known as issue preclusion, "bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (internal citations omitted). Collateral estoppel is proper when the following four-part test is satisfied:

> (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.[5]

*Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997) (quoting *Central Hudson Gas & Elec. Corp.*, 56 F.3d at 368). For the reasons that follow, the Court finds that collateral estoppel bars Strauss from attacking the validity of the CBA between Strauss and the Union, and, in turn, the enforceability of the arbitration clause contained therein.

First, it is clear that the issue in both proceedings is identical. In both the SDNY Action and in the instant action, the relevant issue is whether a valid CBA exists between Strauss and the Union (the "CBA issue"). This conclusion is evident from the conduct of the parties in both lawsuits – Strauss has made identical arguments with regard to the CBA issue in both actions – and from the fact that the identical legal standard governs the outcome of the issue in both actions. *See Comp. Assocs. Intern., Inc. v. Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997) ("For collateral estoppel to apply, the issues in each action must be identical, and issues are not identical when the legal standards governing their resolution are significantly different.") (internal citations omitted). Accordingly, the

---

[5] Because jurisdiction in this action is based on a federal question – namely, whether federal law requires a stay of arbitration initiated by a labor union pending proceedings before the NLRB – the Court applies federal principles of collateral estoppel to determine the preclusive effect of the findings made in the SDNY Action. *See, e.g., Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 41-42 (2d Cir. 1986).

5

Court agrees with Strauss' assertion in its moving papers in the SDNY Action that the CBA issue in the two actions is "identical." (Dft.'s Aff. Ex. B, ¶ 4.)

Second, the Court finds that the CBA issue was actually litigated and decided in the SDNY Action. As discussed *supra*, the parties in the SDNY Action actually litigated the CBA issue by submitting extensive argument in their briefs regarding the issue, and discussed the merits of the issue at length during an oral argument before Judge Hellerstein. Furthermore, also as discussed *supra*, it is clear that Judge Hellerstein actually decided the issue adversely to Strauss – that is, Judge Hellerstein denied Strauss' motion to stay arbitration on the ground that there was not a valid CBA between Strauss and the Union and, accordingly, ordered Strauss to proceed to arbitration notwithstanding the NLRB proceeding initiated by Strauss.

Third, this Court's review of the record of the proceedings in the SDNY Action clearly demonstrates – and Strauss does not dispute – that Strauss had a full and fair opportunity to litigate the CBA issue in the prior proceeding.

Finally, the Court finds that, for collateral estoppel purposes, the resolution of the CBA issue in the SDNY Action was necessary to support a valid and final judgment on the merits. *See Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 955 (2d Cir. 1964) ("[C]ollateral estoppel does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.") (internal quotation marks and citations omitted); *see also Morano v. Dillon*, 746 F.2d 942, 945 n.4 (2d Cir. 1984) ("[A]n adequate and firm determination of one issue in a given action need not await the resolution of the remaining issues before obtaining preclusive effect in a subsequent action."). That is, in the SDNY Action, the court explicitly and finally resolved the CBA issue in rejecting Strauss' request for a stay of arbitration.[6] Accordingly, the Court finds that Strauss is barred by the doctrine of collateral estoppel from relitigating the issue of whether there is a valid CBA between the Union and Strauss.

Strauss presents three unpersuasive arguments in opposition to the collateral estoppel bar in this action. First, Strauss argues that "there is a significant difference between [the Union] and its affiliated funds," and, therefore, "any defenses available to an employer as against a union are of no effect against a fund affiliated with that labor union." (Pl.'s Reply at 2.) In support, Strauss cites *Benson v. Brower's Moving and Storage, Inc.*, 907 F.2d 310 (2d Cir. 1990), wherein the court held, in an action by a union-affiliated fund, that an *employer* could not assert a defense against the fund based on the affiliated union's breach of a collective bargaining agreement. By contrast, in the instant action, the Union seeks to estop an employer, Strauss, from relitigating an issue that was previously decided adversely to the employer in a prior action brought by a union-affiliated fund. As such, the Second Circuit's holding in *Benson*, which addresses the use of certain contract defenses by an employer against a union-affiliated fund, is not relevant to this Court's resolution of the collateral

---

[6] The Court also notes that, upon rejecting Strauss' motion, Judge Hellerstein stated that "[t]here is no case before me now," and indicated that he was keeping the case open solely for the purpose of receiving "reports on a six-month basis" regarding the progress of arbitration, as requested by the Funds in that action. (*See* Dft.'s Aff. Ex. F.)

estoppel issue, which concerns the preclusive effect of an adverse judgment entered against an employer in a prior action. Accordingly, the Court rejects Strauss' first argument.

Second, Strauss argues that Judge Hellerstein wrongly concluded that, because the CBA was a valid and effective agreement, "the Fund arbitration [should] proceed," and, thus, failed to accord sufficient consideration to Strauss' argument that the CBA was a "sham." (Pl.'s Reply at 2.) The Court also rejects that argument. During oral argument in the SDNY Action, Strauss specifically argued that "[i]t is quite clear that if the [CBA] is a sham, . . . [t]hen there is no effectiveness to that [CBA]." (Dft.'s Aff. Ex. F.) Similarly, in its moving papers, Strauss argued, at length, that the CBA was a "sham" agreement, and, thus, should not be enforced. (Dft.'s Aff. Ex. B.) Nevertheless, Judge Hellerstein found that the "validly executed" CBA was a "binding agreement" – that is, a non-"sham" CBA – and, as such, ordered that the parties proceed to arbitration pursuant to the terms of that agreement. (*See* Dft.'s Aff. Ex. F.) Accordingly, it is clear that Judge Hellerstein considered and rejected the "sham" argument presented by Strauss in the SDNY Action. In any event, evening assuming *arguendo* that Judge Hellerstein had failed to properly consider Strauss' argument, "[f]or purposes of collateral estoppel, the correctness of the prior determination is largely irrelevant." *Maneely v. City of Newburgh*, 256 F. Supp. 2d 204, 209 (S.D.N.Y. 2003); *see, e.g., Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) (analyzing collateral estoppel under New York law but noting generally with regard to the doctrine that, "[b]y foregoing the opportunity to reexamine an issue, a degree of certainty about the correctness of the prior result is sacrificed").

Finally, Strauss argues that the doctrine of collateral estoppel does not "apply to a determination of a pure issue of law." (Pl.'s Reply at 3.) Thus, according to Strauss, because Judge Hellerstein concluded that "the execution of the CBA alone, regardless of any other facts, render[ed] the agreement effective," that "pure (and erroneous) conclusion of law does not bind this Court."[7] (*Id.*) The Court finds this argument unpersuasive. "Where pure questions of law – unmixed with any particular set of facts – are presented to a court, the 'interests of finality and judicial economy may be outweighed by other substantive policies,'" such as a concern for public health and safety, and, thus, it may be proper for "a court [to] decline to give preclusive effect to a prior judgment" regarding a "pure" question of law. *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (citing *Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1350, 1356 (2d Cir. 1992)); *see also Environ. Defense v. United States Env. Prot. Agency*, 369 F.3d 193, 203 (2d Cir. 2004). However, in the instant action, it is beyond doubt that Judge Hellerstein applied the law at issue to a set of particular facts. As noted *supra*, Judge Hellerstein expressly determined that there was "a binding agreement" between Strauss

---

[7] The Court notes that Strauss offers a single case citation in support of this assertion. The court in the cited case, *Alloc, Inc. v. Norman D. Lifton Co.*, held that, in the context of patent claims, a district court should afford "Federal Circuit claim interpretation on appeal from the [International Trade Commission] a strong presumption of correctness" when the court considers similar patent claims. No. 03 Civ. 4419 (PAC), 2007 WL 2089303, at *11 (S.D.N.Y. July 18, 2007). The court in *Alloc* did not address the doctrine of collateral estoppel or the preclusive effect that should be afforded to "pure" legal rulings. As such, the Court does not view it as relevant to the instant action.

7

and the Union which was "duly entered into according to its terms" – that is, was not a "sham" contract – and, thus, the parties in the SDNY Action should proceed to arbitration. (Dft.'s Aff. Ex. F.) Accordingly, because Judge Hellerstein's resolution of the CBA issue involved the application of law to a particular set of facts, it is entitled to preclusive effect in this action.

Furthermore, even assuming *arguendo* that Strauss was not barred from relitigating the CBA issue, Strauss' "sham" argument would still fail. That is, Strauss has failed to establish that this Court should determine that the CBA is a "sham," and, thus, find that the arbitration clause contained therein is unenforceable. Strauss fails to cite *an*y judicial opinion in support of the merits of its argument. Instead, Strauss relies on several NLRB decisions wherein the agency resolved the merits of unfair labor practices complaints against employers by finding that, despite the existence of an agreement between the parties, the parties' conduct demonstrated that they "did not believe they were in true collective bargaining relationships," and, thus, the agreements at issue were unenforceable. (*See* Pl.'s Mem. at 7-10 (citing *Ace-Doran Hauling & Rigging Co.*, 171 NLRB 645, 646 (1968)) (additional citations omitted).) However, the Court finds the NLRB decisions cited by Strauss to be inapplicable to the issue raised in the instant motion. In the cited decisions, the NLRB did not address the threshold issue of arbitrability that is now before this Court, but, rather, engaged in heavily fact-intensive inquiries regarding the parties' conduct under an agreement that had unquestionably been reached. Therefore, Strauss has failed to present, and the Court's research has failed to uncover, any binding authority suggesting that this Court should look beyond the gateway issue of arbitrability, discussed *supra*, in order to engage in a fact-intensive inquiry as to whether the parties have maintained a "true" collective bargaining relationship under the CBA.[8]

C. The "Primary Jurisdiction" Doctrine

Finally, Strauss erroneously asserts that its filing with the NLRB has conferred that agency with "primary jurisdiction" over the parties' dispute, and, as such, this Court must stay the arbitration in deference to the proceedings before the NLRB. (*See* Pl.'s Mem. at 3-6.) The "primary jurisdiction" doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Fulton Cogeneration Assoc. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). "The aim of the doctrine . . . is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." *Id.* (citing *General Elec. Co. v. M.V. Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987)).

It is beyond doubt that the "primary jurisdiction" doctrine is inapplicable to the

---

[8] In *Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, the Second Circuit found that, where the "one-time existence of a valid" collective bargaining agreement was not in dispute, issues regarding "the ongoing enforceability of an agreement that the parties unquestionably had reached" were "properly decided by arbitrators" rather than by a court. 351 F.3d 43, 45-46 (2d Cir. 2003). Therefore, under the circumstances of the instant case, "[b]ecause the parties agreed to arbitrate, and because the language of the arbitration clause encompasses" the dispute at issue, this Court finds that questions regarding the scope and ongoing validity of the CBA should not be resolved by this Court. *Id.*

8

instant case. The threshold issue of arbitrability raised by the instant motion is certainly not within the "special competence" of the NLRB, notwithstanding that the NLRB *may* be better equipped to handle certain matters relating to the parties' dispute that are not at issue here – such as, for instance, whether the CBA covers only "one or two" of Strauss' employees, as Strauss contends. *See United States Tour Operators Ass'n v. Trans World Airlines, Inc.*, 556 F.2d 126, 130 (2d Cir. 1977) ("The rationale of the doctrine of primary jurisdiction is not concern for specific litigants, but rather the notion that the agencies, with their special expertise, should have the initial opportunity to develop and administer their policies consistently.") (citing 3 K. Davis, *Administrative Law Treatise* § 19.01 (1958)); *see also Crystal Clear Comm'ns, Inc. v. Southwestern Bell Telephone Co.*, 415 F.3d 1171, 1174 n.2 (10th Cir. 2005) ("In essence, the [primary jurisdiction] doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results.") (quoting *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996)). Instead, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *AT & T Tech., Inc. v. Comm'ns Workers*, 475 U.S. 643, 649 (1986)). Accordingly, because it is well-settled, as discussed *supra*, that federal courts are capable of resolving threshold issues of arbitrability and because the parties have not clearly provided otherwise in the instant case, the Court rejects Strauss' argument that this Court should defer, pursuant to the "primary jurisdiction" doctrine, to the NLRB's determination of the arbitrability issue.

### III. CONCLUSION

For the reasons stated above, Strauss' motion to stay arbitration is DENIED. Accordingly, because the only relief sought by Strauss in this action is a stay of arbitration and that request has been denied, this case is DISMISSED. The Clerk of the Court shall enter judgment accordingly and close this case.[9]

SO ORDERED.

---------------------------------
JOSEPH F. BIANCO
United States District Judge

Dated: August 13, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Richard M. Howard, Esq., Meltzer Lippe Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501. The attorney for defendant is Ira D. Wincott, Esq., 166 East Jericho Turnpike, Mineola, New York 11501.

---

[9] The Court notes that, unlike the SDNY Action, the party opposing Strauss' motion in this action has not asserted any claims against Strauss or requested that this Court retain jurisdiction over the case following the rejection of Strauss' motion.

9